IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| C. RENEE STEPHENSON, et. al, § | |
| Plaintiffs, § | |
| § | ACTION NO. 4:11-CV-02243 |
| VS. § | |
| § | JURY DEMANDED |
| C.M. DUNCAN, et. al, § | |
| Defendants. § | |

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Houston Police Officer C.M. Duncan, Houston Police Chief Charles McClelland, and Houston Police Sergeant R.M. McCray move for summary judgment.

## **List of Exhibits**

Exhibit A - Deposition of K.S.
Exhibit B - Deposition of C.R. Stephenson
Exhibit C - Deposition of D. Stephenson
Exhibit D - Deposition of C.M. Duncan
Exhibit E - Deposition of B.T. McCray
Exhibit F - Expert Report of M. Provost
Exhibit G - Deposition of M.C. Provost
Exhibit H - HPD Juvenile File
Exhibit I - General Order 500-01
Exhibit J - General Order 500-06, Disposition of Arrested Juveniles
Exhibit K - 500-07, Filing Proper Charges
Exhibit L - 600-17, Use of Force
Exhibit M - General Order 600-43, Animal Bites
Exhibit N - Circular No. 11-0406-059, Resisting Arrest, Search or Transportation,
    Evading Arrest or Detention, and Interference with Public Duties - Officer and
    Supervisor Requirements
Exhibit O - Investigative Summary, IAD No. 37074-2010
Exhibit P - Investigative Summary, IAD No. 36952-2010
Exhibit Q - Statement of C.R. Stephenson
Exhibit R - Statement of K.S.
Exhibit S - Statement of B.T. McCray
Exhibit T - Statement of C.M. Duncan
Exhibit U - Statement of P.R. Jeffery
Exhibit V - Statement of T. Wyatt
Exhibit W - Incident Report No. 086717010C.
Exhibit X - Petition of Delinquency

## I. Introduction and Background

Plaintiffs, C. Renee Stephenson, Donothan Stephenson and their son, K.S., sued Officer Duncan and Sergeant McCray in their individual and official capacities and Chief McClelland solely in his official capacity for alleged constitutional violations and pendent state court claims. Plaintiffs allege violations of their First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and for malicious prosecution and excessive force.

Officer Duncan arrested K.S. on June 15, 2010, when responding to a 911 call when he ordered K.S. to stop and show his hands. As Officer Duncan approached K.S., the dog attacked Officer Duncan. Officer Duncan shot the dog. K.S. had a taser when Officer Duncan detained and searched him.[1]

Hearing a gunshot, Mrs. Stephenson came out of her home to see Officer Duncan standing over K.S. She questioned Officer Duncan about what was going on. Officer Duncan explained to Mrs. Stephenson that he was responding to a 911 call.[2] However, because Mrs. Stephenson did not heed Officer Duncan's instructions not to walk through the crime scene where the dog had been shot, he informed her that she would be handcuffed and placed in a patrol vehicle while he controlled the scene. When she did not comply, Officer Duncan placed Mrs. Stephenson in the back of his patrol vehicle. When Mr. Stephenson arrived at the scene, he was eventually handcuffed and placed in

---

[1] Exhibit T - Statement of C.M. Duncan, p. at 2.

[2] Exhibit Q - Statement of C.R. Stephenson, p, at 4, *see also* Exhibit V - Statement of T. Wyatt, p. 1.

a patrol vehicle because he too disregarded instructions to stay out of the crime scene.[3] Other officers responded to the scene, including Officer Duncan's supervisor, Sergeant McCray. Officer Duncan completed an offense report after he transported K.S. to the Houston Police Department Juvenile Division where he was charged with evading arrest and released to his parents while Ms. Stephenson and Mr. Stephenson were released without charges.[4] However, Officer Duncan listed an incorrect street name in the paperwork. The charges against K.S. were dismissed.

The Houston Police Department (HPD) conducted internal investigations of the discharge of Officer Duncan's firearm and plaintiffs' allegations of the use of excessive force. The investigations concluded that the shooting of the dog was justified and that the question regarding the use of force would be classified as exonerated.[5]

Defendants moved to dismiss plaintiffs' second amended complaint on August 2, 2012. DE 33. Plaintiffs responded on August 22, 2012. DE. 34. The motion remains pending.

---

[3] Exhibit T - Statement of C.M. Duncan, p. 2, Exhibit U - Statement of P.R. Jeffery, p. 1.

[4] Exhibit W - Incident Report No. 086717010C; Exhibit H - HPD Juvenile File; Exhibit X - Petition of Delinquency.

[5] Exhibit O - Investigative Summary, IAD No. 37074-2010 and Exhibit P - Investigative Summary, IAD No. 36952-2010.

## II.  Standard of Review

### A.  Motion for Summary Judgment

A court grants summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[6]

### B.  Qualified Immunity

Because police officers must act quickly and decisively, courts must allow for the "fact police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving" and are shielded from liability by qualified immunity.[7]  Courts must consider the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "at the moment" of the action.[8]  Under qualified immunity, if an officer reasonably, but mistakenly, believes that a suspect was likely to try to flee, the officer is justified in using more force than in fact was needed.[9]  Qualified immunity protects "all but the plaining incompetent or those who knowingly violate the law."[10]

---

[6] F ED. R. CIV. P. 56 (a).

[7] *Graham v. Connor*, 490 U.S. 386, 397 (1989).

[8] *Id.*, at 396.

[9] *Saucier v. Katz*, 53 U.S. 194, 205-206 (2001).

[10] *Malley v. Briggs*, 475 U.S. 344, 341 (1986).

### C. Municipal Liability

Claims against governmental employees in their official capacities are claims against the governmental entity that employs them.[11] Thus, plaintiffs' claims against Officer Duncan, Sergeant McCray, and Chief McClelland in their official capacities are essentially claims against the City of Houston, a Texas home-rule municipality.[12]

#### 1. Federal Law Claims

To bring a claim pursuant to 42 U.S.C. § 1983 against a municipality, plaintiffs must show that they were harmed because of a constitutional violation and that the municipality is responsible for that violation.[13] Municipalities have no liability under section 1983 based on *respondeat superior*.[14]

#### 2. State Law Claims

Municipal liability for state law claims must fall within the limited waiver of sovereign immunity set forth the Texas Tort Claims Act. A municipality may be liable for personal injury (1) proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the personal injury from the operation or use of a motor-driven vehicle or equipment and the employee would be personally liable to the claimant according to Texas law or (2) caused by a

---

[11] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 162 (Tex. App.– Houston [1st Dist.] 1991, writ denied).

[12] References to claims against the City or the City of Houston refer to claims against Officer Duncan, Sergeant McCray, and Chief McClelland in their official capacities.

[13] *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

[14] *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978).

condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.[15]

### III.  ARGUMENT

### A.  No Constitutional Violations

Plaintiffs fail to state claims establishing a right of recovery based on any constitutional violation.  Consequently, their federal claims against defendants must fail as a matter of law.

To the extent that plaintiffs assert violations of their rights under the Fifth Amendment, these claims are inapposite as the Fifth Amendment generally applies only to constitutional violations caused by a federal actor and no defendant here is a federal actor.[16]  Plaintiffs' Eighth Amendment claims also must fail because the Eighth Amendment applies only where the plaintiff has been convicted of a crime and does not support claims by pretrial detainees.[17]  Because the Fourth Amendment, to the extent it would apply, governs plaintiffs' claims of unreasonable seizure, the Fourteenth Amendment also does not apply.[18]

Plaintiffs base their alleged claims of constitutional violations on their detention by the officers.  Plaintiffs do not dispute that Officer Duncan was responding to an anonymous 911 call regarding an armed black male dressed in a red shirt, blue short pants, and black pants who was several blocks from their home.  DE 31 at 12-13.

---

[15] TEX. CIV. PRAC. & REM. CODE ANN. §101.021 (Vernon 2005).

[16] *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).

[17] *Graham*, 490 U.S. 386; *Ingram v. Wright*, 430 U.S. 651, 669 (1977).

[18] *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

Plaintiffs concede that Officer Duncan ordered Mrs. Stephenson to go back into her house but she did not obey his command.[19]  DE 31 at 12. Plaintiffs allege that after Sergeant McCray appeared on the scene, both Mrs. Stephenson and Mr. Stephenson were detained in the back of separate police vehicles and released without being charged.  DE 31 at 13-14.

At the time Officer Duncan detained K.S., he had reasonable suspicion to investigate whether K.S. was the suspect described in the 911 call.  Investigative stops are permitted when an officer has a reasonable, articulable suspicion that criminal activity is afoot.[20]  An officer is permitted to use the least intrusive means to verify or dispel his suspicion in a short period of time.[21]  He may also take whatever steps as are "reasonably necessary to protect [his] personal safety and to maintain the status quo" so that the limited purposes of the stop may be achieved.[22]  Courts do not recognize a constitutional violation for routine handcuffing with searches incident to arrest or detention.[23]

Officer Duncan did not exceed the scope of a *Terry* stop when he sought to question K.S.  Officer Duncan was seeking to investigate wether K.S. might be the individual described in the 911 call.  Likewise, when Sergeant McCray joined Officer Duncan, the officers could reasonably take whatever steps necessary to preserve the

---

[19]  Exhibit B - Deposition of C.R. Stephenson, p. 22, Exhibit Q p. 4.

[20]  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

[21]  *Florida v. Royer*, 460 U.S. 492, 500 (2000).

[22]  *United States v. Raino*, 980 F.2d 1148, 1149 (8th Cir.1992).

[23]  *Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005).

status quo, including restricting statements from plaintiffs, while investigating the possibility of K.S. being the suspect described in the 911 call and to investigate the circumstances surrounding the discharge of Officer Duncan's firearm. The existence of a credible serious threat to the physical safety of the officers determines the reasonable of the officers.[24] Both Mrs. Stephenson and Mr. Stephenson admit that they did not comply with the officers' instructions to remain away from the scene while the officers were not only investigating what K.S. might have been doing, but also investigating the discharge of Officer Duncan's firearm.[25]

To succeed on a claim of excessive force, plaintiffs must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable."[26] The reasonableness of officers' use of force is determined by the existence of a credible, serious threat to the physical safety of the officers or to those in the vicinity and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[27] Although the Supreme Court has held that *de minimus* injury standard for excessive force claims is not appropriate, there

---

[24] *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007).

[25] *See* Exhibit B - Deposition of C.R. Stephenson, p. 22, Exhibit C - Deposition of D. Stephenson, p. 18.

[26] *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999).

[27] *Graham*, 490 U.S. at 396-97; *Hathaway*, 507 F.3d at 320.

must still be a discernable injury.[28] Further, "after making a proper *Terry* stop, the police are within their constitutional authority to pat down a party and to handcuff him for their personal safety even if probable cause to arrest is lacking."[29] Allegations of handcuffs being too tight, without more, do not amount to excessive force.[30]

K.S. describes his injuries as the "mental picture of my dog being shot down in front of me" but does not assert any other injuries caused by the actions of the officers.[31] Although Mrs. Stephenson received medical attention at the scene, she does not allege that her injuries were caused by the amount of force any officer used against her.[32] Mr. Stephenson does not complain of any injuries apart from being handcuffed.[33] Thus, none of the plaintiffs can show that they suffered an injury which resulted directly and only from the use of force that was clearly excessive to the need or that any force used was objectively unreasonable.

Plaintiffs also claim that their constitutional rights were violated because Officer Duncan incorrectly recorded their street name as "Westhampton" rather than as "Ripplebrook." There is no evidence that Officer Duncan's data entry error was more

---

[28] *Wilkins v. Gaddy*, – U.S. –, 130 S. Ct. 1175 (2010); *Williams v. Thompson*, No. 5:11cv68, slip op. at 5 (E.D. Tex. Feb. 28, 2012).

[29] *United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000).

[30] *Lockett v. New Orleans City*, 607 F.23d 992, 999 (5th Cir. 2010).

[31] Exhibit R - Statement of K.S. at 2.

[32] Exhibit B - Deposition of C.R. Stephenson, pp. 48-49.

[33] Exhibit C - Deposition of D. Stephenson, pp 33-34.

than mere negligence. However, mere allegations of negligence cannot form the basis for a civil rights action under § 1983.[34]

Because plaintiffs cannot demonstrate a constitutional violation, their claims must fail.

### B. Qualified Immunity

Even assuming for purposes of argument that plaintiffs have pleaded facts sufficient to support a constitutional violation, they cannot show facts to overcome the individual officers' qualified immunity defense. The officers' detention of plaintiffs in order to maintain the status quo momentarily and to conduct their investigation was reasonable in light of the facts known to the officers at the time of their actions.[35] Plaintiffs have not pleaded any facts to show that the individual defendants are not entitled to qualified immunity.

The Expert Report of Assistant Chief M.C. Provost demonstrates that the officers acted as reasonable and prudent officers and that another Texas peace officer facing the same or similar circumstances could have chosen to take the same action.[36] Officer Duncan reasonably detained K.S. when he approached K.S. with his firearm drawn to investigate a suspect he had reasonable suspicion to believe might be armed and pose a threat to safety. Because Officer Duncan perceived the dog to be a threat, Officer Duncan reasonably discharged his firearm. The officers also reasonably detained Mrs.

---

[34] *See Daniels v. Williams*, 474 U.S. 327, 329-336 (1986).

[35] *Adams v. Williams*, 407 U.S. 143, 146 (1972).

[36] Exhibit F - Expert Report of M. Provost.

Stephenson and Mr. Stephenson during the pendency of their investigation to maintain and secure the scene of the incident.

### C. Municipal Liability

Plaintiffs assert that the individual officers "acted pursuant to Houston Police Department unwritten custom, policy or practice of falsely charging individuals with evading arrest and/or detention when there were no other conceivable charges upon which to justify such persons' detention and arrest and thus making the arresting officer the complainant as well" and that Chief McClelland was "actually or constructively aware" of this custom or policy. Again, even assuming that plaintiffs have established a constitutional violation, they cannot show facts to support a cause of action to establish municipal liability. The facts do not show that any custom, policy, or practice was the moving force of any constitutional violation or that the City was deliberately indifferent.

The summary judgment evidence reveals that HPD has General Orders that permit only the amount of force necessary to secure the arrest and detention of suspects.[37] The evidence also shows that officers are authorized to use any force necessary to stop an animal of being attacked or is in imminent danger of being attacked by an animal.[38] The City also has policies regarding the filing of charges against arrested individuals, including juveniles.[39] Even assuming that the officers violated plaintiffs'

---

[37] Exhibit I - General Order 500-01, Effecting Arrests and Searches; Exhibit L - 600-17, Use of Force.

[38] Exhibit M - General Order 600-43, Animal Bites.

[39] Exhibit K - 500-07, Filing Proper Charges; Exhibit J - General Order 500-06, Disposition of Arrested Juveniles.

civil rights, they cannot show that the City any policy which was the moving force of the alleged violations based on wrongful arrest/detention or excessive use of force. Likewise, plaintiffs cannot demonstrate a pattern of wrongs that are both sufficiently numerous and sufficiently similar and specific to the one that caused their plaintiff's injuries so as to impose liability.[40]

In an attempt to show the City's deliberate indifference in allowing the arrest of citizens for resisting or evading arrest, plaintiffs rely on HPD Circular No. 11-0406-059 regarding requirements for charges of resisting arrest and evading arrest or detention.[41] However, as explained by Assistant Chief M.C. Provost, the Circular notified officers that supervisors were to be called to the scene of all resisting and evading arrest cases to allow the supervisor to review the elements of the offense with the arresting officer before contacting the district attorney's office.[42] In this case, Sergeant McCray, Officer Duncan's supervisor, arrived at the scene and discussed the charges with Officer Duncan before the assistant district attorney was contacted as would be the procedure after the implementation of the policy change.[43] Thus, the non-existence of the Circular at the

---

[40] *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005); *Piotrowski v. City of Houston*, 237 F.3d 567, 581-82 (5th Cir.2001).

[41] Exhibit N - Circular No. 11-0406-059, Resisting Arrest, Search or Transportation, Evading Arrest or Detention, and Interference with Public Duties - Officer and Supervisor Requirements.

[42] Exhibit G - Deposition of M.C. Provost, p. 165.

[43] Exhibit A - Deposition of K.S., pp. 84-85; Exhibit E - Deposition of B.T. McCray, p. 60; Exhibit D - Deposition of C.M. Duncan, p. 128, p. Exhibit T - Statement of C.M. Duncan, p. 2; Exhibit S - Statement of B.T. McCray, p. 1.

time of the incident cannot be the moving force of the alleged constitutional violation because the actions of the officers would have complied with the policy had it existed.

Plaintiffs have failed to plead sufficient facts and cannot show facts to establish that a custom, policy or practice of the City was the moving force of their alleged constitutional violations or that the City was deliberately indifferent to their rights.[44]

## D. Conspiracy

Because municipalities cannot enter into conspiracies, they are not liable under 42 U.S.C. §1985.[45] Therefore, the analysis for a plausible cause of action under § 1985 in this case is limited to an allegation of a conspiracy between the individual officers. A cause of action pursuant to 42 U.S.C. §1985(2) requires either a conspiracy "designed to deny or interfere with equal protection rights" or "a nexus between the alleged conspiracy and a proceeding in federal court."[46] Under § 1985(3), a plaintiff must allege "a conspiracy involving two or more persons" for the purpose of depriving him/her or a class of persons of equal protection of the law that causes injury to person or property or a deprivation of a right or privilege of a citizen.[47] The conspiracy must be motivated by a class-based animus.[48]

Plaintiffs cite § 1985, but the only reference to a conspiracy is their allegation that "[s]oon thereafter Sergeant McCray appeared at the Plaintiffs' home and conspired with

---

[44] *City of Oklahoma v. Tuttle*, 471 S. Ct. 808, 824 (1985).

[45] *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998).

[46] *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 980 (E.D. Tex. 2005).

[47] *Batiste*, 421 F. Supp. 2d at 980-81.

[48] *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).

Officer Duncan to falsely fabricate that K.S. evaded detention." DE 31 at 13. There is no evidence to show that the actions of the officers were motivated by race. Because plaintiffs' pleadings contain insufficient facts from which a reasonable trier of fact could find a race-based conspiracy to deny equal protection, dismissal is appropriate.[49]

Even assuming a claim of civil conspiracy under § 1983, plaintiffs' claims must fail because they cannot establish the elements of civil conspiracy[50] and because their claims are barred by intracorporate conspiracy doctrine. As discussed above, plaintiffs have failed to establish a constitutional violation or that the officers are not entitled to qualified immunity, so they cannot establish the first element of a civil conspiracy.[51] Also, plaintiffs cannot establish that the actions taken by the officers were taken in concert with the intent to violate plaintiffs' civil rights.[52]

The intracorporate conspiracy doctrine provides that "a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."[53] Courts in this district have applied the doctrine police departments.[54] While there is an exception to the doctrine

---

[49] *Batiste*, 421 F. Supp. 2d at 981.

[50] The elements of a civil conspiracy under § 1983 are (1) an actual violation of a right protected under 42 U.S.C. § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right. *Castellano v. Fragozo*, 311 F.3d 689, 703 (5th Cir. 2002).

[51] *Mowbray v. Cameron County*, 274 F.3d 269, 279 (5th Cir. 2001).

[52] *Castellano*, 311 F.3d at 703.

[53] *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir. 1994).

[54] *See, e.g.,Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997), *aff'd*, 158 F.3d 583 (5th Cir. 1998) ("A single legal entity, such as the Galveston

for individuals who act in the pursuit of purely personal interests, "a complaint that does not set forth factual allegations showing that any of the individual defendants acted with independent motives is subject to dismissal for failure to state a claim."[55]

### E. State Law Claims

To the extent plaintiffs make pendent state law claims for excessive force and malicious prosecution, they are barred by the doctrine of sovereign immunity and the Texas Tort Claims Act. Plaintiffs' claims are barred because: (1) they are statutorily deemed to have elected remedies solely against the City; (2) they are untimely; and (3) they have not pleaded a cause of action which falls within the limited exception to sovereign immunity found in the Texas Tort Claims Act.

### 1. Election-of-Remedies Bar

If a suit is filed against both a governmental unit (or an individual in his official capacity) and its employees, the employees shall immediately be dismissed on the filing of a motion to dismiss by the governmental unit.[56] This provision provides that Officer Duncan and Sergeant McCray should be dismissed as defendants from the state law claims asserted. The City and its employees, Officer Duncan and Sergeant McCray, were named. Since plaintiffs have irrevocably elected to sue the City, the employees must be dismissed as defendants for state law claims.

---

Police Department and its officers, is incapable of conspiring with itself for the purposes of § 1983.").

[55] *Perrin v. Canadaigua City School Dist.*, No. 08-CV-6153L, slip op. at 2 (W.D.N.Y Nov. 21, 2008).

[56] TEX. CIV. PRAC. & REM. CODE § 101.106(e). The motion to dismiss remains pending. DE 33.

### 2.  No Notice

The Texas Tort Claims Act requires that a claimant give notice which describes the damage or injury claimed, the time and place of the incident, and the incident, to the government unit until not later than six months after the date of the incident giving rise to the claim or within the time required by a city's charter or ordinance provision.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.101.  The City's charter requires notice within 90 days.  HOUSTON, TEX. CHARTER, art. IX, § 11.  Plaintiffs failed to give the statutory notice of claim for their malicious prosecution claims under state law and have failed to meet the requirements to bring their state law claims.[57]

### 3.  No Waiver of Immunity

Although the City is generally immune from suit, the Texas Tort Claims Act provides a limited waiver of sovereign immunity from suit that would otherwise not exist but does not create causes of action.[58]  Plaintiffs fail to plead a cause of action that falls within the waiver of immunity of the Texas Tort Claims Act.   The Tort Claims Act specifically does not waive immunity for claims arising from either the method of providing police protection or an employee's action responding to an emergency call or reacting to an emergency situation, so long as not done with conscious indifference or reckless disregard for the safety of others.[59]  The Tort Claims Act also does not waive immunity for claims based upon governmental entity's misuse of information, even if

---

[57] Exhibit Q - Statement of C.R. Stephenson; Exhibit R - Statement of K.S.

[58] *City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997); TEX. CIV. PRAC. & REM. CODE ANN. §101.021.

[59] TEX. CIV. PRAC. & REM. CODE ANN. § 101.055 (Vernon 2005).

that information is recorded in writing, as information is not tangible property.[60] There is no waiver of immunity because plaintiffs base their claims on police action (the police response to the 911 call) and information (the alleged erroneously address recorded by Officer Duncan). Because the City retains its immunity, the City is entitled to judgment as a matter of law on plaintiffs' state law claims.

### 4. Officers' Immunity of Defendant Benefits the City

To establish a claim against the City based on the actions of one of the City's employees, a plaintiff must prove that the employee would have been personally liable under Texas law.[61] Therefore, if the doctrine of official/qualified immunity shields the employee from liability, then the City can also assert that defense.[62]

A governmental employee is entitled to official immunity when performing a discretionary duty in good faith while within the course and scope of his authority.[63] An employee's individual immunity from a tort claim for damages is preserved under the Texas Tort Claims Act.[64] If a plaintiff cannot prove that the employee would be personally liable under Texas law, then no liability can be imposed on the City.[65]

Therefore, plaintiffs' state law claims must also fail.

---

[60] *Casanova v. City of Brookshire*, 119 F.Supp.2d 639, 665 (S.D. Tex. 2000).

[61] TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(B).

[62] *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995); *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex. 1993).

[63] *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

[64] TEX. CIV. PRAC. & REM. CODE ANN. § 101.026 (Vernon 2005).

[65] TEX. CIV. PRAC. & REM. CODE ANN. §101.021 (1)(B).

**Conclusion and Prayer**

Plaintiffs cannot establish that they have suffered violations of their constitutional rights.  Even assuming they suffered constitutional violations, plaintiffs cannot show that any municipal custom, policy, or practice was the moving force of the violations.  Nor can plaintiffs show that defendants were deliberately indifferent to their rights in their official capacities or that defendants are not entitled to qualified or official immunity in their individual capacities.  Further, they cannot demonstrate a waiver of immunity for their state law claims.

Defendants pray that this Court grant their motion for summary judgment.

> Respectfully submitted,
> DAVID M. FELDMAN
> City Attorney
>
> LYNETTE FONS
> First Assistant City Attorney for Litigation
>
> DONALD FLEMING
> Section Chief,
> Labor, Employment and Civil Rights Section
>
> _/s/ Andrea Chan_
> ANDREA CHAN
> Attorney in Charge
> Senior Assistant City Attorney
> Texas Bar No. 04086600
> Southern Dist. ID No. 14943
> andrea.chan@houstontx.gov
> Attorneys for Defendants

CERTIFICATE OF SERVICE

On the 30th day of **November, 2012**, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon plaintiffs party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the attorney in charge for plaintiffs.

Mr. J. W. Stringer
Attorney at Law
819 Hogan Street
Houston, Texas 77009
jwslaw@earthlink.net

　　　　　　　　　　　　　　　　　　　　　　　　 */s/ Andrea Chan*
　　　　　　　　　　　　　　　　　　　　　　　　ANDREA CHAN

G:\LABOR\AChan\Stephenson\msj.wpd